CULPEPPER, Judge.
The plaintiff, Dr. George W. Moss, seeks damages for personal injuries sustained when the Oldsmobile Station Wagon driven by him collided with a Jeep driven by defendant’s insured, Lee C. Foster. From an adverse judgment on the merits, plaintiff appeals.
The substantial issue is factual: Immediately before the collision, did the approaching Jeep suddenly turn left into plaintiff’s path or was the Jeep parked on the shoulder of the highway, where plaintiff struck it?
The scene of the collision is on a blacktopped highway, in a rural area of Con-cordia Parish, near a certain cattle gap, which extends across the road. The highway runs approximately north and south. North of the cattle gap, it curves slightly to the east. About 60 feet south of the cattle gap, a dirt ramp leaves the highway on the west side and leads to a small, dirt road used principally by deer hunters.
The accident occurred during hours of darkness at about 5:15 a. m. on December 15, 1963. .The weather was clear and cold.
The plaintiff, accompanied by two young men, was going squirrel hunting. He, was driving in a southerly direction toward the cattle gap. His version of the accident is as follows: He first noticed the lights of the Jeep, facing north, when he was about 300 yards north of it; the Jeep lights were weaving back and forth across the highway; plaintiff thought the people in the Jeep were “either drunk or asleep”; he had slowed down to about 30 miles per hour when he reached the cattle gap; the Jeep then suddenly left its right side of the road and turned to its left directly into plaintiff’s lane of travel; plaintiff applied his brakes full force, skidding the wheels approximately 40 feet; the right front of plaintiff’s automobile struck the right side of the Jeep about in the center; at the time of the impact, the Jeep was almost perpendicular to the road with its front wheels *138 on the shoulder and its rear wheels on the pavement in plaintiffs lane; as a result of the impact the Jeep was flipped over and rolled down the west shoulder; plaintiff’s station wagon moved only a few feet past the point of impact and came to rest, with its right front wheel at the west edge of the pavement and its right rear wheel about 4 feet east of the west edge of the pavement, which would mean that plaintiff’s entire vehicle came to rest on the pavement; that due to damage, the automobile could not be pushed off the pavement.
Defendant’s version of the accident is entirely different. Mr. Foster and his wife, accompanied by Dr. and Mrs. Dick Tomae, were going deer hunting. They too had been driving in a southerly direction along the highway in a Buick automobile, pulling the Jeep behind, with the intention of parking the Buick on the highway and using the Jeep to go into the woods on the deer road. They parked the Buick, facing south, with its lights out, on the west shoulder of the road about ISO feet south of the cattle gap; they then unhooked the Jeep, turned it around on the highway, and backed it up to the back of the Buick to transfer their hunting equipment; after transferring their gear, the four deer hunters got into the Jeep, which at this time was on the west shoulder of the road facing north, with its lights on; Mr. Foster then noticed the approach of plaintiff’s automobile and, because of the curve in the road and the position of the Jeep, it appeared that the Moss vehicle was coming straight at them; Mr. Foster, fearing that plaintiff was going to leave the highway and strike them, put the Jeep into gear and attempted to cut left into the ditch; before he could do so, the right front of the station wagon struck the right center of the Jeep; the point of impact was entirely on the west shoulder of the highway; after the collision, plaintiff’s vehicle came to rest with the right front wheel on the shoulder, the left front wheel on the blacktop, and the rear angling back across the west lane at about 45 degrees.
One of the principal points of conflict between -the two versions of the accident is the place where plaintiff’s vehicle came to rest following the collision. Plaintiff contends the evidence preponderates that his station wagon came to rest on the pavement. He and his two young companions testified to this effect. Also, the state trooper who investigated the accident, the wrecker operator, and a Mr. J. D. Smith, father of one of the young companions, testified that when they arrived at the scene, about an hour or more after the collision, the station wagon was on the pavement in its proper lane. They also testified generally to the effect that 40 feet of skidmarks leading to plaintiff’s vehicle and dirt and debris located near the right front of the automobile, indicated the point of impact was on the pavement.
As opposed to these witnesses, all 4 occupants of the Jeep said the point of impact was on the shoulder, several feet from the pavement. Also, Robert Swayze, Mayo York and Carl McClure, Jr., testified that when they arrived at the scene, immedialy after the collision, the right front portion of the station wagon was on the shoulder and the rear angled back across the highway at about 45 degrees, in such a way as to create a traffic hazard. They said they pushed plaintiff’s vehicle back on the pavement and straightened it out in the west lane so that traffic could pass safely. If this is true, it explains why the state trooper, the wrecker operator and Mr. Smith found the vehicle on the pavement.
In the final analysis, plaintiff’s argument is that the trial judge erred in his evaluation of the credibility of the witnesses. Plaintiff argues particularly that defendant’s witnesses, Swayze, York and McClure, were untruthful in testifying they pushed the station wagon back onto the pavement. But, the trial judge believed them. The evaluation of the credibility of witnesses is peculiarly within the province *139 of the trial judge. We certainly can find no manifest error in this regard.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.